■ James H. Higgins, III, as Trustee of the Betty Higgins Inter Vivos Trust, et al., Appellants, v Robert D. Douglas et al., Respondents. [758 NYS2d 702] —Spain, J. Appeal from an order of the Supreme Court (Dawson, J.), entered October 19, 2001 in Essex County, which, inter alia, in a proceeding pursuant to RPAPL article 15, determined plaintiffs' rights with respect to an easement over lands owned by plaintiffs.

Plaintiff James H. Higgins, III, as trustee of an inter vivos trust, owns property in the Town of North Elba, Essex County (hereinafter the Town), the western border of which lies along the easterly shore of Lake Placid (hereinafter the Higgins parcel). Plaintiff Emily F. Frank, individually and as a trustee, and other members of her family own an adjacent lakefront parcel directly to the north of the Higgins parcel (hereinafter the Frank parcel). Both parcels are encumbered by an easement occupying 20 feet on each side of their common boundary, running east/west over plaintiffs' lands to the lake (hereinafter the easement). The easement was created in 1900 by a deed to Daisy Rogers (hereinafter the Rogers deed), which

specifically granted a right-of-way over plaintiffs' parcels to provide lake access to the property deeded to Rogers—which lies on the other side of a private road, known now as Ruisseaumont Road—to the east of the Higgins and Frank parcels (hereinafter the Rogers parcel).

Following various conveyances, the Rogers parcel and another parcel directly to the south of it—which also lies along the east side of Ruisseaumont Road—came into the common ownership of two couples, Florence Potter and Harry Potter and Harold Christie and Mary Christie. The Potters and Christies eventually redivided the property—the Potters taking the northerly portion of the lands and the Christies the southerly portion—but, in doing so, they altered the original boundary lines of the Rogers parcel. This alteration resulted in both the Potters and the Christies owning a portion of the Rogers parcel, the original dominant estate, the Potters retaining the bulk of it and the Christies taking title only to approximately 5,500 square feet of it. Defendants Harriet P. De-Franco, Samuel DeFranco, Catherine DeFranco and Julie D. Connor (hereinafter collectively referred to as the DeFranco defendants) are the successors in interest to the parcel formerly owned by the Potters, while defendants Robert D. Douglas and Kimberly B. Douglas (hereinafter collectively referred to as the Douglas defendants) are the current owners of the parcel formerly owned by the Christies.

In May 2000, the Douglas defendants installed a dock in Lake Placid at the westerly end of the easement.[1] The dock itself is located entirely within the water, secured by metal rods. In addition, there is a wooden ramp or gangway connecting the dock to the shore which is constructed of the same materials and in the same style as the dock. Plaintiffs, the servient landowners, thereafter commenced this action seeking: first, a declaration pursuant to RPAPL article 15 that the Douglas defendants do not benefit from the easement[2] and, in any event, that the easement does not permit the installation of a dock; second, relief under Town Law § 268 for the Douglas defendants' alleged violations of the Town's Land Use Code;

---

**1.** This is the only dock connected to the easement—the DeFranco defendants apparently have not installed a dock.

**2.** Plaintiffs concede that the DeFranco defendants maintain an easement over their property but have included the DeFranco defendants as necessary parties to the litigation as they have an interest in, and have taken a position with respect to, their right, if any, to place a dock at the end of the easement.

and, third, monetary damages.[3] Defendants answered, counter-claimed and cross-claimed, each seeking a declaration that all defendants enjoy an interest in the easement and a right to install a dock.

In May 2001, plaintiffs moved for a preliminary injunction to prevent the Douglas defendants from installing the subject dock for the 2001 summer season. Defendants cross-moved for summary judgment dismissing plaintiffs' complaint. Supreme Court denied plaintiffs' request for a preliminary injunction and partially granted defendants' cross motions for summary judgment to the extent of dismissing plaintiffs' second cause of action on the grounds that the dock itself is located on navigable waters and is, thus, outside the jurisdiction of the Town, and the connecting gangway used to access the dock is not a dock and, therefore, not subject to the regulations on which plaintiffs rely. With respect to the first cause of action, Supreme Court granted partial relief to defendants, declaring that all defendants are entitled to use and enjoy the easement as successors in interest to Rogers, but that issues of fact exist concerning whether the easement carries with it the right to install a dock. On plaintiffs' appeal, we find that defendants were entitled to summary judgment dismissing the complaint in its entirety.

We turn first to the question raised in plaintiffs' first cause of action of whether the Douglas defendants have an interest in the easement as declared by Supreme Court. We previously have held that, as a general proposition, where a dominant estate is divided into separate parcels, unless specifically reserved, the rights to an appurtenant easement pass to the subsequent owners of each subdivided parcel, even if the resulting dominant and servient estates are not contiguous "so long as no additional burden is imposed upon the servient tenement by such use" (*Cronk v Tait*, 279 AD2d 857, 858 [2001], citing 49 NY Jur 2d, Easements and Licenses in Real Property § 160, at 275; *see Green v Mann*, 237 AD2d 566, 567 [1997]). Plaintiffs concede that the Douglas defendants are the owners of a portion of the original Rogers dominant estate and it is evident from the maps provided in the record that the Douglas defendants can gain access to the easement via Ruisseaumont Road.

Plaintiffs argue, however, that the Rogers deed to the Potters and Christies which created the easement restricts the

---

**3.** Plaintiff Mara J. Miller, who owns property approximately 900 feet to the north of the Frank parcel, seeks relief solely under the second cause of action.

use of the easement to a single family. We disagree. The Rogers deed granted the Rogers parcel "TOGETHER with a right of way * * * from [Ruisseaumont Road] to the easterly shore of Lake Placid over a strip of land 40 feet in width." In a separate provision, the Rogers deed contains several restrictive convents, including the promise that the dominant property owner "will not erect or build or suffer to be erected or built upon the said premises any structure or building whatsoever other than a dwelling house for the use of one family and such barn, stable and other out building as may be necessary for use in connection therewith." Plaintiffs contend that this language evinces an intent that only one family should ever benefit from the easement and thus prohibits the use of the easement by any additional, partial successors in interest to the original dominant estate such as the Douglas defendants.

The restrictive covenant appears in a separate, unrelated paragraph in the deed apart from the language conveying the easement. In our view, as a matter of law, the Rogers deed does not provide any express restriction on the use of the easement by Rogers' heirs and assigns as plaintiffs claim (*see Green v Mann, supra* at 567). Moreover, it would be illogical to draw the distinction that plaintiffs would have us make—between the interests of the DeFranco defendants and the Douglas defendants—based solely on the amount of the original dominant estate that each group of defendants now holds.

Plaintiffs also argue on appeal that the Douglas defendants' use of the easement imposes an additional burden on their servient estates and, thus, should not be permitted (*see Cronk v Tait, supra* at 858). The only facts on which plaintiffs have relied is that the easement will be used by a second family and that the Douglas defendants have young children. We hold, as a matter of law, that standing alone these facts do not amount to overburdening sufficient to defeat an easement holder's right of ingress and egress (*see e.g. Krosky v Hatgipetros*, 150 AD2d 344, 345 [1989]; *Jakobson v Chestnut Hill Props.*, 106 Misc 2d 918, 926 [1981]).

Next, all parties debate Supreme Court's determination that material questions of fact exist regarding the scope of the easement—specifically, whether the property interest conveyed by the Rogers deed carries with it the right to install a dock. " 'The extent and nature of an easement must be determined by the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties' " (*Albrechta v Broome County Indus. Dev. Agency*, 274 AD2d 651, 651-652 [2000], quoting *Hopper v Friery*, 260 AD2d 964,

966 [1999]; *see Martone v Prislupsky*, 269 AD2d 673, 674 [2000]). Inasmuch as the language at issue was written over 100 years ago and the parties have not identified any disputed issue of fact bearing on the issue of the intent of the original parties to the Rogers deed, we conclude that the scope of the easement may be decided here as a matter of law.

"In determining the extent of an easement, it 'must be construed to include any reasonable use to which it may be devoted, provided the use is lawful and is one contemplated by the grant'" (*Albrechta v Broome County Indus. Dev. Agency, supra* at 652, quoting *Phillips v Jacobsen*, 117 AD2d 785, 786 [1986]). Moreover, "'[w]here, as here, the language of the grant contains no restrictions or qualifications and the purpose of the easement is to provide ingress and egress, any reasonable lawful use within the contemplation of the grant is permissible'" (*Martone v Prislupsky, supra* at 674, quoting *Mohawk Paper Mills v Colaruotolo*, 256 AD2d 924, 925 [1998]). The description of the easement necessarily leads to the conclusion that the grantor intended to convey to Rogers a means of accessing the lake, presumably for recreational purposes. In our view, the installation of a dock at the end of such an easement to facilitate access to the lake and enhance the enjoyment of the same, where otherwise lawful, is a reasonable use incidental to the purpose of the easement (*see Monahan v Hampton Point Assn.*, 264 AD2d 764 [1999]; *see also Briggs v Di Donna*, 176 AD2d 1105, 1107 [1991]; *Marra v Simidian*, 79 AD2d 1046, 1047 [1981]). Accordingly, defendants are entitled to summary judgment on the first cause of action.[4]

Next, with regard to the second cause of action, plaintiffs contend that the installation of the Douglas' dock violated the Town's Land Use Code inasmuch as it was installed without a permit (*see* Town of North Elba Land Use Code, part IV, art IV, § 17 [A]) and violates required set-back provisions (*see* Town of North Elba Land Use Code, part V, art IV, § 19 [A] [7] [b]). The cited provisions are preempted in cases where the dock, building or structure at issue is located in a navigable water because, in that instance, the State has exclusive jurisdiction (*see* Navigation Law § 30; *Town of Alexandria v MacKnight*, 281 AD2d 945 [2001]; *Erbsland v Vecchiolla*, 35 AD2d 564, 565

---

4. Supreme Court also found issues of fact exist as to whether the dock violates a restrictive covenant contained in the Rogers deed which prohibits building within 60 feet of the center line of the easement. Plaintiffs have not pursued this argument on appeal. In any event, the aforesaid covenant does not appear to be applicable inasmuch as it is limited to restricting infringement of the easement by the servient owners.

[1970], *lv denied* 27 NY2d 485 [1970]). There being no question that Lake Placid is a navigable water, Supreme Court examined the dock independent of the ramp and found it to be wholly located on the water and, thus, not subject to the Town's regulatory authority. Supreme Court then examined the gangway and likewise found it not subject to the Town's regulation because the gangway is not a "structure" within the meaning of the town code and is, thus, not regulated by the cited provisions.[5]

Plaintiffs' quarrel with Supreme Court's analysis stems from their assertion that the gangway and dock should not be separately analyzed.[6] Because the gangway has no useful, independent function but is clearly a part of the dock, we agree. However, we disagree with plaintiffs that, because the dock is partly on the shore (by virtue of the connecting gangway), it is within the Town's jurisdiction. The Navigation Law expressly governs the "[l]ocation of structures in or on navigable waters," including a "wharf, dock, pier, jetty, platform or other structure built on floats * * * temporary or permanent" (Navigation Law § 32 [1]). The definitions of both a dock and a pier describe structures which are connected to the uplands or shoreline (*see* Navigation Law § 2 [21], [22]). Accordingly, we cannot conclude that a dock otherwise located in navigable waters falls outside of the State's exclusive jurisdiction simply because part of the structure is connected to the shore (*see* Navigation Law §§ 30, 32 [1]; *see also Town of Alexandria v MacKnight, supra; Erbsland v Vecchiolla, supra*).

Finally, we reject plaintiffs' argument that they should not have been held to the ordinary three-part standard required for the issuance of a preliminary injunction to a private litigant on the premise that they stand in the shoes of the Town under Town Law § 268, dispensing with the requirement of irreparable injury (*see Town of Thompson v Braunstein*, 247 AD2d 753, 754 [1998]). While the Town Law does provide that

---

**5.** Plaintiffs allege violation of parts IV and V of the Town's Land Use Code which apply only to "buildings" and "structures" (*see* Town of North Elba Land Use Code, part IV, art I, § 4 [B]; part V, art I, § 4 [B]). Because a "structure" is defined as "[a]ny permanent building, assembly or installation in conjunction with the principal or accessory use of a lot" (Town of North Elba Land Use Code, part VI, appendix D), Supreme Court found that the mobile (i.e., on wheels) gangway was nonpermanent and, thus, not a dock.

**6.** Plaintiffs make the alternative argument that jurisdiction over the dock should rise and fall with the factual question of whether the lands underlying the water are privately owned. We do not find this issue determinative of our navigability analysis, where there is no question that Lake Placid is a navigable water (*see Mohawk Val. Ski Club v Town of Duanesburg*, 304 AD2d 881 [2003]).

"any three taxpayers of the town residing in the district where[ ] such violation exists" are empowered, under certain circumstances, to enjoin a zoning violation (Town Law § 268 [2]), here plaintiffs failed to plead or demonstrate on appeal that three resident taxpayers were commencing the action. Accordingly, Supreme Court properly held plaintiffs to the correct standard.

Mercure, J.P., Crew III, Rose and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendants' cross motions for summary judgment; cross motions granted in their entirety, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.