*222 OPINION OF THE COURT
Richard B. Meyer, J.
The primary question presented in these cases,[2] which appears to be one of first impression, is whether an owner of real property or a building contractor can be held criminally liable under Executive Law § 382 (2) solely because they allowed or engaged in construction activities without first obtaining a building permit under the State Uniform Fire Prevention and Building Code (the state building code) (Executive Law art 18). Based upon the express language of the statute, this court holds that they cannot and those counts of the indictment charging a violation of Executive Law § 382 (2) must be dismissed.
A.
Each defendant is charged by a three-count indictment, filed on August 4, 2011, with having violated Executive Law § 382 (2) and Town of North Elba Local Law No. 1 of 2000 (the Town land use law) by failing to obtain permits prior to commencing and engaging in construction of a boathouse wholly within the waters of Lake Placid in the Town of North Elba, Essex County. The charges arise out of construction activities on property owned by the defendant William H. Grimditch (Grim-ditch) conducted by the defendants Daniel Nardiello and Robert K. Scheefer. The defendants are individually charged with two misdemeanor[3] counts of violating Executive Law § 382 (2) by commencing and engaging “in construction of a boathouse on September 13 and 14, 2010 without a building permit” issued under the state building code. They are also charged with a noncriminal violation in the third count for failing to obtain a building use permit on September 13, 2010 under the Town land use law.
Review of the grand jury minutes reveals that the former special district attorney instructed the grand jury regarding the *223 requirements of a building permit under the state building code and of a “building use permit” under the Town land use law. He read portions of various sections of Executive Law article 18,[4] as well as portions of 19 NYCRR 1203.3 (a), relative to the state building code mandate of a building permit. He finished his instructions by reading to the grand jury three provisions of the Town land use law[5]
[6]which: prohibit the construction of a building or structure, or any site alteration, on “any shoreline” in the Town or Village without a “building use permit” issued by the Joint Village of Lake Placid/Town of North Elba Review Board (JRB); designate the Town building code enforcement officer (CEO) “as a public official with the responsibility for the administration and enforcement of the [state building code] and the related village and town laws”; and impose a penalty of a fine of up to $500 for each violation of the land use law.
The evidence before the grand jury consisted of the testimony of the CEO together with exhibits consisting of a letter, a stop work order, photographs of the construction, and architectural drawings of the boathouse. The CEO testified that on the morning of September 13, 2010 he spoke with Scheefer about the construction and Scheefer told him that he was building a boathouse for Grimditch. The CEO returned to his office, prepared a letter addressed to Grimditch and Scheefer requesting that they stop construction® as well as a stop work order, and then went to the Grimditch property. He spoke with Scheefer *224 again, who advised him that he was a subcontractor to Nardiello. Scheefer refused to accept a copy of the letter although the CEO told him what was in it. Nardiello arrived, looked at the letter but refused to physically take it from him or accept delivery of it, instead referring the CEO to Grimditch who was then in the residence. A Department of Environmental Conservation (DEC) ranger showed up. The ranger looked at the caissons and, because they were less than 10 inches in diameter, determined that no DEC permit was needed. The CEO testified that he tried to serve the stop work order[7] on Nardiello but he did not do so because Nardiello told him that Grimditch was in the residence and that the CEO should speak with Grimditch. The CEO went to the front door of the residence and knocked. The door was answered by Grimditch’s daughter although the CEO could see Grimditch inside. Grimditch’s daughter told the CEO that she would take the stop work order and give it to an attorney. The CEO asked her to give it to Grimditch, but she said that it needed to go to their attorney and she would make sure that the attorney received it. The stop work order specifically referred only to a violation of the Town land use law’s site design and architectural review guidelines which require review of proposed construction projects by the JRB prior to construction.[8] The CEO returned to the site the next day and observed ongoing construction activity.
*223 “This office has observed the stock piling of materials and machinery on your vacant lot (Tax Map No.: 33.016-21.110). Currently this office has not been asked to review any plans, nor have any permits been issued. Any construction without proper plans and permits may violate Local and State Laws. Therefore, this office asks that you stop any intended construction projects until proper review and permitting procedures are followed. In an effort to insure compliance this office will offer any assistance you need to process the paperwork. I trust having this information will allow you to comply with Local and State Standards for new construction.”
*224 “PLEASE TAKE NOTICE, there exists a violation . . . N.Y.S. Uniform Fire Prevention & Building Code X . . . [and] Other Applicable Laws, Ordinances or Regulations X as follows: Local Land Use Code — Part Three, Section 12 (A) ‘No building, structure or installation shall be located or constructed and no site alteration made so as to alter any shoreline in the Town/ Village without a Building/Use Permit therefore.’ Local Land Use Code — Part IV, Article 5 — SITE DESIGN AND ARCHITECTURAL REVIEW GUIDELINES At premises described as Mount Whitney Way, Lake Placid, NY, Tax Map No.: 33.016-2-1.110, a boathouse is being built without the permission of the Joint Village of Lake Placid and Town of North Elba Review Board or a building permit from the Village of Lake Placid/Town of North Elba Building Department. YOU ARE THEREFORE DIRECTED AND ORDERED to comply with the law and to remedy conditions above mentioned forthwith on or before the 13th day of September, 2010. Failure to remedy the conditions aforesaid and to comply with the applicable provisions of law may constitute an offense punishable by fine or imprisonment or both.”
*225 B.
“[A]n indictment is jurisdictionally defective ... if the acts it accuses defendant of performing simply do not constitute a crime (see People v Case, 42 NY2d 98), or if it fails to allege that a defendant committed acts constituting every material element of the crime charged (see People v McGuire, 5 NY2d 523)” (People v Iannone, 45 NY2d 589, 600 [1978]).
Thus, it is required that an indictment contain
“[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, . . . asserts facts supporting every element of the offense charged and the defendant’s . . . commission thereof with sufficient precision to clearly apprise the defendant ... of the conduct which is the subject of the accusation” (CPL 200.50 [7] [a]).
Executive Law § 382 (2) provides as follows:
“Any person, having been served, either personally or by registered or certified mail, with an order to remedy any condition found to exist in, on, or about any building in violation of the uniform fire prevention and building code, who shall fail to comply with such order within the time fixed by the regulations promulgated by the secretary pursuant to subdivision one of section three hundred eighty-one of this article, such time period to be stated in the order, and any owner, builder, architect, tenant, contractor, subcontractor, construction superintendent or their agents or any other person taking part or assisting in the construction of any building who shall knowingly violate any of the applicable provisions of the uniform code or any lawful order of a local government, a county or the secretary made there *226 under regarding standards for construction, maintenance, or fire protection equipment and systems, shall be punishable by a fine of not more than one thousand dollars per day of violation, or imprisonment not exceeding one year, or both.”
There are thus two possible ways in which a defendant can be found guilty of violating this statute. First, a defendant must (1) have “been served, either personally or by registered or certified mail, with an order to remedy any condition found to exist in, on, or about any building in violation of the uniform fire prevention and building code” (emphasis added), and (2) “fail to comply with such order within the time fixed by the regulations promulgated by the secretary pursuant to subdivision one of section three hundred eighty-one of this article, such time period to be stated in the order.” The element of proper service here is similar to that in the prosecution of criminal contempt in the second degree based upon the violation of a subpoena (Penal Law § 215.50 [3]) which requires that “a sufficient information must include both a copy of the subpoena and a corroborating affidavit which comports with the ‘proof of service’ requirements set forth in CPLR 306” (People v Griffin, 10 Misc 3d 626, 627 [2005]; People v White, 22 Misc 3d 292, 294 [2008]). Minimally, this requires the indictment to include as an allegation of fact that service of the stop work order was made upon the defendants. The other critical element of this crime is that there be a factual allegation of a “condition found to exist in, on, or about any building in violation of the” state building code which a defendant does not remedy after being served with an order to do so. The lack of a building permit is not such a condition.
Alternatively, for a defendant to be criminally liable under section 382 (2) he must (1) be an “owner, builder, architect, tenant, contractor, subcontractor, construction superintendent or their agents or any other person,” (2) “tak[e] part or assist[ ] in the construction of any building,” and (3) “knowingly violate any of the applicable provisions of the uniform code or any lawful order of a local government, a county or the secretary made thereunder regarding standards for construction, maintenance, or fire protection equipment and systems” (emphasis added). An essential element of this version of the crime is that there be a violation of those standards. The mere failure to obtain a building permit, without more, is not a violation of “standards for construction, maintenance, or fire protection equipment and systems.”
*227 The express language of Executive Law § 382 (2), as well as review of the legislative bill jacket for chapter 707 of the Laws of 1981 by which Executive Law §§ 370-383 were enacted, does not disclose any intent on the part of the Legislature to criminalize all violations of the uniform code. The words of a statute are the “clearest indicator of legislative intent” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). “ ‘Where, as here, the literal language of a statute is precise and unambiguous, that language is determinative’ (Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale, 87 NY2d 410, 417-418 [1995])” (People v M&H Used Auto Parts & Cars, Inc., 22 AD3d 135, 142 [2005], lv denied 6 NY3d 755 [2005]). It is clear that the Legislature intended to criminalize only those violations which created a danger to the public, namely “a condition in, on or about” a building in violation of the uniform code or a “standard of construction, maintenance, or fire protection equipment and systems” in that code. “The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended (McKinney’s Cons Laws of NY, Book 1, Statutes, § 74)” (Pajak v Pajak, 56 NY2d 394, 397 [1982]). Had the Legislature intended it to be a criminal offense for a person to fail to apply for or obtain a building permit, it would have utilized words to that effect in Executive Law § 382 (2).
Counts one and two of each indictment are, for the foregoing reasons, defective on their face since they do not allege facts “constituting every material element of the crime charged” (People v Iannone, 45 NY2d at 600).
C.
The evidence before the grand jury was also legally insufficient to support the counts of the indictments charging a violation of Executive Law § 382. “ ‘Legally sufficient evidence’ means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10 [1] [emphasis added]; see also People v Jennings, 69 NY2d 103 [1986]; People v Rivera, 266 AD2d 85 [1999]).
No evidence was presented that on September 13 or 14, 2010 “any condition [was] found to exist in, on or about any building in violation of the” state building code, or that any of the defendants “knowingly violatefd] any of the applicable provisions of the uniform code or any lawful order of a local government *228 . . . regarding standards for construction, maintenance or fire equipment and systems.” There was no evidence presented to the grand jury as to a specific provision of the state building code or any standard of construction or maintenance in that code which was violated by the construction work on those dates. Neither the letter nor the stop work order issued by the CEO identified any such condition or standard. The lack of a building permit is not a condition “in, on, or about” a building, and the requirement of a building permit is not a standard of construction or maintenance.
Finally, there was no evidence submitted to the grand jury establishing that any of the defendants were served “either personally or by registered or certified mail” (Executive Law § 382 [2]) with the stop work order. Service upon Grimditch’s daughter, without the subsequent mailing of a copy to Grim-ditch at his residence or actual place of business, is insufficient to prove that personal service was made upon Grimditch (see CPLR 308 [2]) or upon any of the other defendants as required by statute. The CEO did not testify that he served or attempted to personally serve Scheefer. His testimony about trying to serve the stop work order upon Nardiello was conclusory only as he did not describe any of his physical actions to effectuate personal service upon Nardiello.
Counts one and two of each indictment must be dismissed as the evidence before the grand jury failed to establish each element of a violation of Executive Law § 382 (2).
D.
Count three of each indictment, charging the defendants with failing to obtain a building use permit under the Town land use law, must also be dismissed. The boathouse structure, located entirely within the waters of Lake Placid and connected to the shore by a removable “wooden ramp or gangway” is exempt from the Town land use law since local zoning laws are
“preempted in cases where the dock, building or structure at issue is located in a navigable water because, in that instance, the state has exclusive jurisdiction (see Navigation Law § 30; Town of Alexandria v MacKnight, 281 AD2d 945 [2001]; Erbsland v Vecchiolla, 35 AD2d 564, 565 [1970], lv denied 27 NY2d 485 [1970]).” (Higgins v Douglas, *229 304 AD2d 1051, 1055-1056 [2003]; Town ofN. Elba v Grimditch, Essex County, Aug. 24, 2011, index Nos. 770-10, 818-10.)
There being no jurisdiction on the part of the JRB to issue a building use permit for the boathouse under the Town land use law, the defendants cannot be prosecuted and held in violation of that law for failing to apply for and obtain one.
E.
The indictments in each case are dismissed in their entirety. The remaining issues which the parties stipulated be addressed need not be reached.

. By stipulation dated December 9, 2011 counsel for the respective parties submitted to this court certain pretrial issues (see CPL 255.10) including dismissal of the indictments, suppression of evidence, and other relief.

. Any offense defined outside of the Penal Law for which a sentence can be imposed to a term of imprisonment in excess of 15 days but not more than one year is an unclassified misdemeanor (Penal Law § 55.10 [2] [c]).

. Section 378 (1), providing for the state building code to address “[standards for the construction of all buildings or classes of buildings, or the installation of equipment therein, including standards for materials to be used in connection therewith, and standards for safety and sanitary conditions”; the definitions of “[b]uilding” and “[t]emporary greenhouse” in section 372 (3) and (17); section 381 (2) requiring “every local government” to administer and enforce the state building code; and section 382 (1) and (2).

. Part 3, § 12 (A); article VI, part 4, § 4; and article VI, part 4, § 2 (A) and (B).

. This letter, admitted into evidence as exhibit 1 and read to the grand jury, provides:

. The stop work order, admitted into evidence as exhibit 2 and read to the grand jury, provides:

. The JRB has no legal authority to review proposed construction projects and determine whether they meet the requirements of the state building code. *225 Municipalities are required to “provide for such administration and enforcement by local law, ordinance or other appropriate regulation” (19 NYCRR 1203.2 [a]) and clearly identify “[t]he persons, offices, departments, agencies or combinations thereof authorized and responsible for administration and enforcement” (19 NYCRR 1203.2 [f]). All “code enforcement personnel . . . who are charged with enforcement . . . [must] complete the prescribed minimum basic code enforcement training” (19 NYCRR 1208.1 [a]), and such personnel are responsible for reviewing all “ [applications for a building permit or for an amendment thereto ... to ascertain whether the proposed construction is in substantial conformance with the requirements of the Uniform Code” (19 NYCRR 1203.3 [a] [4]). The Town designated the CEO to perform this function and complete the required training, not the members of the JRB.