*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 2, 2015                    520007
_____

TOWN OF NORTH ELBA et al.,
                    Respondents-
                    Appellants,

        v

CAROLYN W. GRIMDITCH, as
    Personal Representative and
    Executor of the Estate of
    WILLIAM H. GRIMDITCH JR.,
    Deceased, et al.,
                    Appellants-
                    Respondents.

(Action No. 1.)                              OPINION AND ORDER
_____

JOHN M. McMILLIN III et al.,
                    Respondents-
                    Appellants,

        v

WAYNE H. GRIMDITCH et al.,
                    Appellants-
                    Respondents.

(Action No. 2.)
_____


Calendar Date:  June 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.


                    _____


        Whiteman, Osterman & Hanna, LLP, Albany (John J. Henry of
counsel) and James M. Brooks, Lake Placid, for appellants-
respondents.

Powers & Santola, LLP, Albany (Michael Hutter of counsel) and Briggs Norfolk, LLP, Lake Placid (Ronald J. Briggs of counsel), for Town of North Elba and another, respondents-appellants.

McNamee, Lochner, Titus & Williams, PC, Albany (John J. Privitera of counsel), for John M. McMillin III and others, respondents-appellants.

_____

Egan Jr., J.

Cross appeals from an order of the Supreme Court (Buchanan, J.), entered October 6, 2014 in Essex County, which, among other things, granted plaintiffs' motions for summary judgment.

The underlying facts and related procedural history — detailing the numerous prior motions and various requests for injunctive relief between the parties — are fully set forth in our most recent decision in this matter (98 AD3d 183 [2012]) and need not be repeated here. In a nutshell, these actions concern two boathouses that were constructed without building permits on the shoreline and in the waters of Lake Placid in the Town of North Elba, Essex County. As is relevant here, William H. Grimditch Jr. (hereinafter Grimditch)[1] began construction of a three-slip boathouse on his unimproved lakefront property on Lake Placid in September 2010, and his children, defendants Wayne H. Grimditch and Carol Lynn Grimditch Roda (hereinafter collectively referred to as the children) undertook similar construction of a one-slip boathouse on their nearby vacant lakefront property. In response, plaintiff James E. Morganson, the Code Enforcement Officer for the Village of Lake Placid/Town of North Elba, immediately issued the first of three stop work orders, and

_____

[1] Grimditch, originally a defendant in this action, died in 2013 and his spouse, Carolyn W. Grimditch, in her capacity as his personal representative and executor of his estate, was substituted as a party defendant.

Morganson and plaintiff Town of North Elba (hereinafter collectively referred to as the Town) moved for a preliminary injunction to halt construction by Grimditch and the children (hereinafter collectively referred to as defendants).

Supreme Court (Meyer, J.) initially allowed construction of both boathouses to continue to the extent of permitting the installation of the caissons and decking, but issued a limited preliminary injunction requiring defendants to apply for building permits pursuant to the New York State Uniform Fire Prevention and Building Code Act (hereinafter SBC) and to comply with the provisions of the Village of Lake Placid/Town of North Elba Land Use Code (hereinafter LUC). In so doing, the court warned defendants that, if they proceeded with construction, including the installation of the caissons and decking, they did so "at [their] own peril and on notice that [they] may be required, at [their] sole cost and expense, to remove all such improvements . . . in the event that the [Town] finally prevail[ed] . . . on the merits." The Town then commenced two actions against defendants, later consolidated (action No. 1), and plaintiffs John M. McMillin III, Ellen M. McMillin, Richard Moccia and Leslie Moccia (hereinafter collectively referred to as the neighbors), who own land adjacent to the children's parcel, commenced a separate action (action No. 2) seeking, among other things, removal of the children's boathouse.

During the course of the litigation that followed, and while the parties' motions and cross motions for, among other things, summary judgment were pending, defendants substantially completed construction of both boathouses — without successfully obtaining the required building permits or administratively challenging the Town's denial thereof. In August 2011, Supreme Court (Meyer, J.), relying upon our prior decision in Higgins v Douglas (304 AD2d 1051 [2003]), granted summary judgment to defendants dismissing both actions. In so doing, the court found, among other things, that the LUC did not apply to the construction of defendants' boathouses; accordingly, the court ordered the Town to issue the requested building permits. Upon appeal, this Court reversed the award of summary judgment to defendants, holding — insofar as is relevant here — that because "Lake Placid is not owned by the State in its sovereign capacity

and most of the lake is within the Town's boundaries, the Town's zoning authority includes that portion of the lake, making the LUC applicable to structures constructed therein," including defendants' boathouses (98 AD3d at 195).

Following our remittal for further proceedings, additional motion practice ensued. Ultimately, Supreme Court (Buchanan, J.) issued two well-reasoned decisions[2] that, among other things, awarded summary judgment to the Town and the neighbors (hereinafter collectively referred to as plaintiffs), ordered defendants to "abate their violation of the [SBC and LUC] . . . by dismantling the two boathouses . . . to the point where all that remains are the caissons and decking initially authorized" and denied the Town's request that civil penalties be imposed. Defendants now appeal, and plaintiffs cross-appeal from that part of the order that spared the caissons and decking. The Town also seeks the imposition of civil penalties against defendants.[3]

As a threshold matter, Supreme Court correctly concluded that the neighbors have standing to challenge the asserted zoning violations and to seek injunctive relief against the children. Although municipal officials indeed are tasked with enforcing zoning ordinances within their boundaries (see Town Law § 268 [2]), this "does not prevent . . . private property owner[s] who suffer[] special damages from maintaining an action seeking to enjoin the continuance of the violation and obtain damages to vindicate [their] discrete, separate identifiable interest[s]" (Nemeth v K-Tooling, 100 AD3d 1271, 1273 [2012] [internal quotation marks and citations omitted]). To establish standing to maintain a private common-law action to enjoin zoning

_____

[2]  The first decision extensively recounted the history of these actions, but held resolution of the respective motions in abeyance pending the completion of certain specified discovery; the second decision addressed the merits of the parties' motions and cross motions.

[3]  This Court granted defendants' motion for a stay of Supreme Court's order pending appeal (2014 NY Slip Op 91928[U] [2014]).

violations, a private plaintiff must establish that, due to the defendant's activities, he or she will sustain special damages that are "different in kind and degree from the community generally" and that the asserted interests fall "within the zone of interest to be protected" by the statute or ordinance at issue (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413, 414 [1987]).

To that end, the neighbors both alleged and submitted proof that they own land (improved with single-family homes) on either side of the children's parcel and that the children's boathouse was built without the permits required by the LUC and SBC. The neighbors also demonstrated that the children's boathouse violates various provisions of the LUC, including those governing set-backs and prohibiting accessory structures on land that lacks a principal building (see Joint Village of Lake Placid/Town of North Elba Land Use Code part IV, art III, § 4; art V, appendix F [II]). Where, as here, the offending premises are immediately adjacent to the neighbors' property, "a loss of value may be presumed from the depreciation of the character of the immediate neighborhood, and the [neighbors] need not allege specific injury" (Zupa v Paradise Point Assn., Inc., 22 AD3d 843, 844 [2005]; see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 414-415; Citizens for St. Patrick's v City of Watervliet City Council, 126 AD3d 1159, 1160 [2015]). We find that the neighbors' specific allegations of close proximity give rise to an inference of damage and injury, thereby permitting them to maintain action No. 2. Moreover, the neighbors have demonstrated that their interests fall within the "zone of interest" protected by the LUC, in that violations thereof adversely affect their privacy and property values (see Nemeth v K-Tooling, 100 AD3d at 1273-1274; Zupa v Paradise Point Assn., Inc., 22 AD3d at 844). Indeed, we recognized as much in our prior decision permitting the neighbors to intervene, concluding that they "have an interest in the litigation by virtue of their status as owners of adjoining premises" (96 AD3d 1305, 1306 [2012]).

Next, we reject as meritless defendants' contention that, because the construction of the boathouses is now complete, plaintiffs' claims are either moot or barred by the doctrine of

laches.  While "the doctrine of mootness [may be] invoked where a change in circumstances prevents a court from rendering a decision that would effectively determine an actual controversy" (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d 165, 172 [2002]), where the change concerns the completion of construction, courts must consider several factors, including whether the challengers sought "preliminary injunctive relief or otherwise [attempted to] preserve the status quo to prevent construction from commencing or continuing during the pendency of the litigation" (id. at 173; accord Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d 727, 729 [2004]; Matter of Kowalczyk v Town of Amsterdam Zoning Bd. of Appeals, 95 AD3d 1475, 1477 [2012]).  Notably, completion of a project does not preclude injunctive relief because offending structures ordinarily can be dismantled (see Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 172).

Here, defendants — proceeding without authority, approval or the required permits and in utter disregard of stop work orders — engaged in what can only be described as an unseemly "race to completion" (id.; compare Matter of Kowalczyk v Town of Amsterdam Zoning Bd. of Appeals, 95 AD3d at 1477-1478).  In response, the Town took immediate and repeated action to halt construction and preserve the status quo, including issuing stop work orders, denying permit applications, repeatedly seeking injunctive relief, expeditiously commencing legal actions and moving for summary judgment (compare Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d at 729-730; Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 174; Matter of Kowalczyk v Town of Amsterdam Zoning Bd. of Appeals, 95 AD3d at 1477-1478; Matter of Riverkeeper, Inc. v Johnson, 52 AD3d 1072, 1073-1074 [2008], lv denied 11 NY3d 716 [2009]).  The neighbors also commenced their own action and moved for a preliminary injunction.  Additionally, as noted previously, defendants were expressly warned as early as September 2010 that, while they would be allowed to install the caissons and decking, they were required to obtain the necessary permits and any construction, including the installation of the caissons and decking, would be "at [their] own peril."  As such, defendants were placed on

notice at a very early stage that "completion was undertaken at [their] own risk" (Matter of Hart Family, LLC v Town of Lake George, 110 AD3d 1278, 1279 n 1 [2013]; see Matter of Schupak v Zoning Bd. of Appeals of Town of Marbletown, 31 AD3d 1018, 1020 [2006], lv dismissed 8 NY3d 842 [2007]).  Under these circumstances, we conclude that these actions are not moot.

As to the doctrine of laches, it is settled law that a municipality may not, except in "the rarest cases," be estopped from enforcing its zoning laws or otherwise prevented from discharging its statutory duties in this regard (Matter of Parkview Assoc. v City of New York, 71 NY2d 274, 282 [1988], appeal dismissed and cert denied 488 US 801 [1988]; see Matter of Berchielli v Zoning Bd. of Appeals of Town of Westerlo, 202 AD2d 733, 735 [1994], lv denied 83 NY2d 757 [1994]).  The neighbors, in turn, were entitled to reasonably rely both upon the LUC itself and the fact that the Town would seek to enforce the provisions thereof, "thereby protecting against diminution in the value of the[ir] property by nonpermitted uses" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d at 412).  In addition to relying upon the Town's numerous enforcement efforts, the neighbors sought to intervene in the Town's action against the children and thereafter commenced their own action seeking injunctive relief. Under these circumstances, it cannot be said that the neighbors unreasonably delayed in protecting their interests (see Matter of Letourneau v Town of Berne, 89 AD3d 1202, 1203 [2011]; compare Matter of Miner v Town of Duanesburg Planning Bd., 98 AD3d 812, 813-814 [2012], lv denied 20 NY3d 853 [2012]).

Turning to the merits, we find that Supreme Court correctly granted plaintiffs' motions for summary judgment and denied defendants' cross motions for summary judgment.  There no longer is any dispute that the SBC and LUC apply to the construction of defendants' boathouses (98 AD3d at 187).  The boathouses, in turn, qualify as buildings for which permits were required under the Executive Law, its implementing regulations and the LUC (see Executive Law §§ 372 [3]; 378 [1]; 19 NYCRR 1203.3 [a]; Joint Village of Lake Placid/Town of North Elba Land Use Code part III, art II, § 12 [A]), and there is no question that the Town has the authority to administer and enforce the provisions thereof (see

Executive Law §§ 371 [2] [d]; 381 [2]).  Additionally, the LUC specifies a review process to be followed in order to obtain the required permits (see Joint Village of Lake Placid/Town of North Elba Land Use Code arts II, § 12 [A]; III; part V, appendices C, § II [B]; D, § I; F).  No permits (save the initial conditional permit for the caissons and decking) were ever obtained for the boathouses — in fact, the permit applications were denied for noncompliance with the LUC — and the review process outlined therein was not followed.  Thus, plaintiffs' proof was sufficient to discharge their initial burden on their summary judgment motions — namely, establishing that the boathouses were not lawfully constructed.

In opposition to plaintiffs' motions and in support of their cross motions, defendants argued — and continue to assert on appeal — that our most recent decision in this matter, wherein we held that the LUC indeed applied to the construction of defendants' boathouses (98 AD3d at 187), effectively changed the law as it existed under Higgins, thereby (1) depriving defendants of their vested rights to maintain the boathouses and (2) allowing such structures to remain as prior nonconforming uses.[4] These arguments fail for a number of reasons.

"Nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance" (Glacial Aggregates LLC v Town of Yorkshire, 14 NY3d 127, 135 [2010] [internal quotation marks, brackets and citation omitted]; see Jones v Town of Carroll, 15 NY3d 139, 143 [2010]; Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d 88, 97 [2009]; Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 95 AD3d 1636, 1637 [2012]).  While a permit is not a prerequisite to establishing a prior nonconforming use (see Buffalo Crushed

_____

[4]  To the extent that defendants have not briefed any issues with respect to their remaining affirmative defenses and counterclaims, we deem any arguments related thereto to be abandoned (see Borst v International Paper Co., 121 AD3d 1343, 1345 n 2 [2014]).

Stone, Inc. v Town of Cheektowaga, 13 NY3d at 101-102; Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 126 AD3d 1094, 1095 [2015]), the nonconforming use doctrine has no application here because the boathouses were not constructed prior to the enactment of, or any relevant amendment to, either the LUC or SBC.  That is, the boathouses were – subject to certain specific requirements – a permitted use under the LUC when they were constructed, and those structures did not become nonconforming by virtue of either a zoning change or this Court's most recent decision in this matter (98 AD3d at 187).[5]

Defendants' vested rights claim is similarly unavailing. Defendants' argument on this point is again premised upon the claim that, at the time that construction began, the provisions of the LUC did not – as per our prior decision in Higgins – apply to the subject boathouses.  According to defendants, they were entitled to rely upon Higgins, and such reliance, together with the considerable funds expended in the construction effort, affords them certain vested rights relative to the boathouses in question.  There are several flaws in this argument – most notably, that, prior to construction, defendants did not obtain the required permit from the Town pursuant to the SBC.  Nothing in any of the prior judicial or administrative decisions suggested that an SBC permit and/or compliance therewith was not required; indeed, when this matter was last before us, we expressly noted that "defendants' boathouses are structures subject to the SBC" (98 AD3d at 187).[6]  Thus, the provisions of the LUC notwithstanding, defendants – in violation of stop work orders – undertook and completed construction without obtaining

_____

[5]  Notably, prior nonconforming use principles are grounded upon an actual change in a zoning ordinance, as opposed to a judicial interpretation thereof (see e.g. Matter of Cinelli Family Ltd. Partnership v Scheyer, 50 AD3d 1136, 1137-1138 [2008], lv denied 11 NY3d 707 [2008]; Costa v Callahan, 41 AD3d 1111, 1113-1115 [2007]).

[6]  The Town's September 2010 stop work orders and October 2010 complaint likewise put defendants on notice that compliance with the SBC and its permit requirements was required.

the required SBC permits or securing and/or complying with Town approvals.  Under these circumstances, defendants' vested rights argument must fail.

Finally, as alluded to previously, our most recent decision in this matter — wherein we clarified that the Navigation Law preempts local land use laws and confers upon the state exclusive jurisdiction only where the state owns the navigable waters in its sovereign capacity — did not constitute a change in a zoning law or ordinance so as to give rise to a prior nonconforming use or vested rights claim relative to defendants' unpermitted construction of the subject boathouses (98 AD3d at 187, 195). Under these circumstances, limiting this Court's holding regarding the applicability of the LUC to a prospective application only is not warranted, nor do we discern any basis upon which to depart from the rule that "cases should be decided on the basis of the law as it exists at the time of decision" (People v Favor, 82 NY2d 254, 263 [1993]; accord Windsearch, Inc. v Delafrange, 90 AD3d 1223, 1224 [2011]).  To the extent that defendants seek to revisit our prior holding as to the applicability of the LUC, they are precluded from doing so under the law of the case doctrine (see Briggs v Chapman, 53 AD3d 900, 901 [2008]; Beneke v Town of Santa Clara, 45 AD3d 1164, 1165 [2007], lv denied 10 NY3d 706 [2008]).

We turn next to defendants' selective enforcement claim, which is premised upon instances in which the Town has not enforced the LUC against other property owners in similar situations — namely, where the Town has allowed accessory uses (primarily docks and boathouses) on lakefront property despite the lack of the required principal structures or where there were other violations of the LUC, or where the Town did not commence enforcement actions despite the property owner's failure to obtain a permit in advance.  A selective enforcement claim — if proven — amounts to an equal protection violation, which, in turn, "arises where first, a person (compared with others similarly situated) is selectively treated and second, such treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (Bower Assoc. v Town of Pleasant Val., 2 NY3d 617, 631

[2004]; see Matter of Loudon House LLC v Town of Colonie, 123 AD3d 1406, 1409 [2014]). Even assuming that the other property owners identified by defendants were similarly situated, a finding that the Town does not challenge on appeal, defendants failed to submit proof from which it can be inferred that the Town singled them out with "malevolent intent" or "intent to injure" – the sole impermissible motives upon which defendants rely (Bower Assoc. v Town of Pleasant Val., 2 NY3d at 631; see Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 693-695 [1979]).

The record, including Morganson's testimony and affidavit, supports Supreme Court's conclusion that "it was defendants' own actions that precipitated their treatment by the Town" – namely, in completing construction without obtaining the required building permits and, following the denial thereof, ignoring an initial stop work request and order, pursuing construction in violation of a conditional permit to erect only the caissons and decking, subsequently ignoring further stop work orders and preventing Morganson from coming onto their properties to inspect. In short, defendants' actions provided a rational basis for the Town's disparate treatment of them, and their reliance upon speculation to demonstrate the Town's malevolent intent is insufficient to overcome the presumption that the Town's enforcement of its laws was "undertaken in good faith and without [impermissible] discrimination" (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d at 694). Accordingly, this claim was properly dismissed.[7]

As to the issue of remedy, given the circumstances under which these unpermitted boathouses were built, we deem the equitable remedy fashioned by Supreme Court – requiring that defendants abate their violations of the SBC and LUC by

_____

[7] Supreme Court's finding that the motive behind "the Town's actions toward [d]efendants has been to uphold the law and the authority of Town . . ., not vendetta or other improper animus toward [d]efendants," is fully supported by the record and is consistent with our prior finding that "the Town's . . . actions were designed to enforce the LUC" (98 AD3d at 196).

dismantling and removing the boathouses (see Executive Law § 382 [3]; Town Law § 268 [2]) — to be a provident exercise of the court's discretion (see CPLR 3017 [a]; Town of Caroga v Herms, 62 AD3d 1121, 1126 [2009], lv denied 13 NY3d 708 [2009]). "Injunctive relief . . ., including the removal of [] unauthorized structure[s]," is an appropriate remedy (Beneke v Town of Santa Clara, 45 AD3d at 1164; see Town of Caroga v Herms, 62 AD3d at 1126). Such relief is particularly warranted where, as here, the record contains abundant support for the finding that the offending structures were built in a persistent and "calculated" effort to circumvent and defy the Town's authority and efforts to enforce its zoning laws and procedures (see Town of Copake v 13 Lackawanna Props., LLC, 99 AD3d 1061, 1064 [2012], lv denied 20 NY3d 857 [2013]; Matter of Massa v City of Kingston, 284 AD2d 836, 838-839 [2001], lvs denied 97 NY2d 603 [2001]). As such, the "drastic remedy of demolition . . . is justifiable" (Matter of Massa v City of Kingston, 284 AD2d at 840).

That said, we agree with plaintiffs that the caissons and decking should be removed as well. In balancing the equities, Supreme Court noted defendants' early reliance upon our decision in Higgins v Douglas (304 AD2d 1051 [2003], supra), as well as the order authorizing a conditional permit to erect the caissons and decking to accommodate defendants' desire to complete such work before certain Adirondack Park Agency regulations went into effect. Defendants, however, were warned that if they proceeded with construction, they would do so at their own peril and could ultimately be required to remove "all such improvements," including the caissons and decking, if plaintiffs prevailed. Despite that warning, defendants, among other things, ignored stop work orders, proceeded with construction of the boathouses without the required permits and generally flouted both the Town's authority and persistent efforts to enforce its zoning requirements. We therefore conclude that plaintiffs are entitled to the removal of the caissons and decking, and Supreme Court's order must be modified to that extent.

Finally, while the imposition of significant civil penalties would not be unreasonable given defendants' actions, we will defer to Supreme Court's exercise of discretion in declining to impose such penalties (cf. Town of Caroga v Herms, 62 AD3d at

1126).  The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Devine, JJ., concur.


ORDERED that the order is modified, on the law, with costs to plaintiffs, by reversing so much thereof as denied that part of plaintiffs' motions for summary judgment requesting that the caissons and decking for the boathouses be removed and as established a time line for the dismantling of the boathouses and the removal of all contents and materials related thereto; motion granted in its entirety; defendants shall commence the dismantling of the subject boathouses, caissons and decking within 30 days of the date of this Court's decision and shall complete the dismantling of the boathouses, caissons and decking within 90 days of the date of this Court's decision; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court