■ In the Matter of WATCH HILL HOMEOWNERS ASSOCIATION, INC., et al., Petitioners, v TOWN BOARD OF THE TOWN OF GREENBURGH et al., Respondents. [641 NYS2d 443] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Appellate Division, Second Department) to review a determination of respondent Town Board of the Town of Greenburgh which adopted a negative declaration of environmental significance regarding construction of a public water storage tank.

After a study of its water system revealed a need for a new water storage facility, respondent Town Board of the Town of Greenburgh (hereinafter respondent) proposed constructing a 200-foot tall, 1,000,000-gallon water tank on a small parcel of land near the Watch Hill residential subdivision in Westches-

ter County. Respondent declared itself the lead agency for the project under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), and designated the proposal a "Type I" action (*see*, 6 NYCRR former 617.5 [a] [4]; 617.12). An initial Environmental Assessment Form (hereinafter EAF) was then circulated, and in response to concerns expressed by, *inter alia*, the County Planning Board of Westchester County, a revised EAF was prepared. Although respondent, in the second EAF, noted that erection of the tank would have several "potential large impacts" on the surrounding environment, it nevertheless adopted a negative declaration of significance (*see*, 6 NYCRR former 617.6 [g]; 617.11) and accepted construction bids.*

By this CPLR article 78 proceeding, petitioners seek to annul respondent's approval of the construction contract. They maintain, *inter alia*, that respondent's issuance of a negative declaration was arbitrary and capricious, and violative of SEQRA. In due course the matter was transferred to the Second Department, which in turn transferred it to this Court. Respondents (the Town and a consolidated water district) have since moved to dismiss the proceeding, arguing that the completion of construction, and/or the recent amendment of regulations implementing SEQRA, have resulted in petitioner's challenge becoming moot.

Respondents' contrary view notwithstanding, we are not persuaded that dismissal is warranted. While construction of the underlying project can render a challenge of this type moot when the petitioner has not made any attempt to preserve its rights pending judicial review (*see*, *Matter of Bytner v City of Albany Bd. of Zoning Appeals*, 211 AD2d 1000; *Matter of Caprari v Town of Colesville*, 199 AD2d 705, 706), that is not the circumstance here, for petitioner sought preliminary injunctive relief—which was denied—as soon as it became aware that construction was imminent. Respondents were thus placed on notice that if they proceeded with construction, it would be at their own risk. Notably, it has not been alleged that the tower is not removable (*see*, *Matter of Dreves v New York Power Auth.*, 131 AD2d 182, 187, *lv dismissed* 71 NY2d 889).

The amendments to 6 NYCRR part 617, as respondent

---

* Prior to finally approving the project, respondent also applied to the Zoning Board of Appeals for a variance from setback and height requirements, which it ultimately received. Petitioners' separate CPLR article 78 proceeding seeking annulment of that decision was dismissed on the ground that the Town is exempt from the zoning ordinance, and accordingly did not require a variance to proceed with the project. That ruling has not been challenged.

observes, now provide that an action is no longer considered Type I merely because it is contiguous to a critical environmental area (hereinafter CEA) (*see*, 6 NYCRR former 617.4 [h]; *compare*, 6 NYCRR former 617.12 [b], *with* 6 NYCRR 617.4 [b]). There is, however, no indication that this was the only basis respondent relied upon when assigning Type I status to the project at issue. It is noteworthy that respondent classified the proposal as Type I even before it issued the first EAF, despite the fact that it was apparently unaware of the tower's proximity to a CEA (the County park) until after that EAF was circulated. The basis for respondent's Type I designation is therefore unclear; it is possible that this determination was made pursuant to regulations adopted by the Town, as permitted by 6 NYCRR former 617.12 (a) (2) (repealed Jan. 1, 1996 and replaced by 6 NYCRR 617.4 [a] [2]), or for other reasons.

Moreover, even if erection of the tank were no longer considered a Type I action, it would nevertheless, as an unlisted action, necessitate preparation of an environmental impact statement (hereinafter EIS) if it were found to have a "significant adverse impact" on the environment (6 NYCRR 617.7 [a] [1]). Not insignificantly, one of the factors to be considered in determining if such an impact is likely is the potential for "impairment of the environmental characteristics" of a CEA (*see*, 6 NYCRR 617.7 [c] [1] [iii]), including aesthetic resources. That being so, we are unable to agree with respondent that evaluation of the project under the new regulations would not, in all probability, result in the preparation of a full EIS.

With respect to the merits, petitioners persuasively contend that respondent's issuance of a negative declaration was inappropriate, and that its approval of the construction contract for the tank must therefore be annulled. When a proposed action is classified as Type I, the threshold for requiring an EIS is relatively low, for this classification carries with it a presumption that the action is apt to have a significant effect on the environment, and consequently that the detailed evaluation provided by an EIS is required prior to decisionmaking (*see*, *Matter of Town of Dickinson v County of Broome*, 183 AD2d 1013, 1014). Because respondent, in arriving at its decision to issue a negative declaration despite the existence of several "potential large impacts" the project might have on the environment, did not address the requisite criteria for determining whether those impacts are actually "important" (*see*, 6 NYCRR former 617.11 [c], replaced by 6 NYCRR 617.7 [c] [3]), it cannot be said to have made, as it was obliged to, a "reasoned elaboration" of the basis for that determination (6

NYCRR former 617.6 [g] [2] [iv]; *see, Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363-364; *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232).

In its evaluation of the importance of the project's potential effects on aesthetic resources (*see, Matter of WEOK Broadcasting Corp. v Planning Bd.*, 79 NY2d 373, 381), respondent did not discuss the probability of such effects occurring, their duration, their regional consequences or other pertinent elements, nor did it arrive at any explicit conclusion with respect to whether the identified aesthetic impacts were indeed "important". Rather, the analysis of these impacts states only that the visual effect of this 200-foot tower will be mitigated by plantings at its base, and by painting it a grey-blue color, to "blend with the surrounding sky". Given the undeniable impact that this large water tank will have on the visual aesthetic resources of the area, including the adjacent County park land, respondent's analysis is patently insufficient to justify issuance of a negative declaration (*see, Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton*, 205 AD2d 623, 625).

The need for an EIS here could not be avoided merely by the adoption of a few mitigating measures, which do not negate the adverse effects to any great extent (*see, Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd.*, 157 AD2d 273, 276-277; *compare, Matter of Hare v Molyneaux*, 182 AD2d 908, 909). Once the environmental impact of a proposed action is determined to be significant, an EIS must be prepared, and the possibility of adopting an alternative plan fully explored, before the effectiveness of any proposed mitigation can be properly assessed. Only after this process is completed can the need for constructing the project, as planned, be weighed against the feasibility of meeting that need in a less intrusive manner (*see, Matter of Town of Dickinson v County of Broome, supra*, at 1014; *Matter of Shawangunk Mtn. Envtl. Assn. v Planning Bd., supra*, at 275-276).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Adjudged that the determination is annulled, with costs, petition granted and Resolution No. 93-46 of the Town of Greenburgh (adopting the negative declaration), along with any subsequent determination authorizing the construction of the water tank, is declared invalid.