OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 As this zoning dispute has made its way through the courts to us, the question has become one of mootness. We now dismiss the appeal as moot.
 

 The case centers on a 56,000 square foot commercially zoned waterfront property located on Reynolds Channel in Long Beach.
 
 [1]
 
 The site was used as a marina, which after decades of financial difficulty, in 1991 ultimately went into bankruptcy. The property, located in an otherwise residentially zoned neighborhood, is bounded by single- and two-family homes, a youth center, and a veterinarian and pet center (the only other business in the immediate area).
 

 In 1999, Keystone Design and Construction Corporation entered into a contract to purchase the site for $2,400,000, with the intention of developing condominiums. Keystone applied to respondent Zoning Board of Appeals of the City of Long Beach (the Board) for a use variance, proposing to build 23 semi-attached condominium units and 35 boat slips on the property. That application was denied, setting in motion the events leading to this appeal.
 

 Keystone reapplied for a use variance, reducing the proposed number of condominiums to 20. At a February 24, 2000 Board hearing, Keystone’s counsel supported the application with traffic and environmental studies, testimony from a real estate appraiser, and estimates of expected costs and profits associated with the construction. Petitioners — four owners of neighboring single-family homes — and several other local residents present at the hearing spoke in favor of a residential use of the property, but opposed construction of a “wall” of
 
 *170
 
 condominiums. That very day, Keystone’s owner formed a related corporation, Bay Club of Long Beach, Inc., which purchased the property. On May 26, 2000, the Board for a second time denied the use variance, based on a failure to submit sufficient financial proof of need for the variance, and concern that the extra boat slips could lead to overcommercialization of the property.
 

 Following the Board’s decision, Bay Club again sought a use variance, this time based on a scaled-back proposal of 20 condominiums and 20 boat slips. At a June 22, 2000 hearing on the application, Bay Club introduced
 
 first,
 
 a brief letter from Pam-Tom Realty, Inc., the prior owner, reciting without specifics its financial difficulties over the previous 25 years in operating the marina and its unsuccessful efforts to sell the property;
 
 second,
 
 a letter from a potential purchaser stating with minimal financial detail its reasons for not pursuing the acquisition; and
 
 third,
 
 documents from Pam-Tom’s 1991 bankruptcy case, including unsupported valuation figures for the property. Several local residents in attendance at the June hearing again spoke both in favor of residential use for the site and against the condominium proposal. Petitioner Edward Arata asked that Bay Club be required to cease excavation and remove the heavy equipment from the site until the Board rendered its decision.
 

 On July 27, 2000, the Board voted unanimously to grant the use variance and additionally granted a rear yard area variance, which petitioners do not challenge. That same night, unknown at the time to the Board, the Nassau County Planning Commission separately recommended denial of a use variance on the ground that the property could and should be put to permitted uses. Shortly thereafter, the Board issued a negative declaration under the State Environmental Quality Review Act (SEQRA).
 

 On August 28, 2000, the Board adopted a resolution effectuating its grant of the variance. The Board found that Bay Club had introduced sufficient evidence of its need for a use variance in that the proposed project would bring the site more into harmony with the essential residential character of the neighborhood; Bay Club is unable to realize a reasonable return from commercial uses of the property, as evidenced by the prior owner’s bankruptcy and difficulty selling the property; Bay Club’s hardship — as the owner of the only commercially-zoned property in the area — is unique; and Bay Club’s hardship is
 
 *171
 
 not self-created because, regardless of ownership, the site cannot be used for commercial purposes.
 

 Petitioners on September 6, 2000 filed an article 78 proceeding in Supreme Court, challenging the Board’s grant of the variance as illegal, arbitrary, capricious and unsupported by substantial evidence in the record, and further contending that Bay Club failed to prove any of the statutory factors required for a use variance.
 
 [2]
 
 Petitioners requested no preliminary injunctive relief. On February 13, 2001, Supreme Court dismissed the petition, finding the Board had acted within its discretion in granting the variance based on Bay Club’s unchallenged proof of need. By this time, work at the site was underway, with the marina torn down, the bulkhead repaired, utilities reconfigured, foundation permits issued and pouring of foundations for the condominiums begun.
 

 Petitioners first sought injunctive relief on February 22, 2001, in conjunction with their appeal to the Appellate Division, after learning that the City was about to issue building permits for the condominiums. In their order to show cause, petitioners observed that Bay Club had already begun pouring the foundations pursuant to previously granted permits, and that further building permits would be issued imminently. Petitioners resisted posting any undertaking, arguing that Bay Club should have included the foreseeable costs of delay in its purchase price, and that they should not have to bear large undertaking costs both because of the merit of their position and because “it is not at all clear whether they could or would do it” if required by the court. Accordingly, they requested that the undertaking, if imposed at all, be “as low as possible.” The Appellate Division denied petitioners’ requests for a temporary
 
 *172
 
 restraining order and preliminary injunction, and subsequently denied both their request for a calendar preference and Bay Club’s cross motion to dismiss the appeal as moot.
 

 In October 2001, the Appellate Division affirmed dismissal of the petition on the ground that the record contained sufficient proof of Bay Club’s unnecessary hardship to support the Board’s decision to grant the variance (287 AD2d 453). A dissenting Justice urged reversal and denial of a use variance on the ground that Bay Club failed to submit “competent financial evidence” of any of the applicable statutory factors, particularly noting that its proof of an inability to realize a reasonable return from permitted commercial uses fell short of the “dollars and cents” proof historically required by this Court
 
 (see e.g. Matter of Village Bd. of Vil. of Fayetteville v Jarrold,
 
 53 NY2d 254 [1981]). Neither Appellate Division writing addressed mootness.
 

 Around the time this Court granted leave to appeal in January 2002 (97 NY2d 608), 12 of the units had been fully constructed with the remaining eight in various stages of completion, and the offering literature was on file with the Attorney General.
 
 [3]
 

 Petitioners, who now seek demolition of the units, argue that their appeal remains justiciable given that they promptly filed an article 78 proceeding and sought preliminary relief from the Appellate Division prior to actual construction. Respondent Bay Club contends that the Board’s decision to grant the variance — reviewable only for an abuse of discretion
 
 (see e.g. Matter of Cowan v Kern,
 
 41 NY2d 591, 598 [1977]) — was supported by record evidence of undue hardship, and has been rendered unreviewable by substantial completion of the project.
 

 Typically, the doctrine of mootness is invoked where a change in circumstances prevents a court from rendering a decision that would effectively determine an actual controversy
 
 (see
 
 Karger, Powers of the New York Court of Appeals § 71 [a], at 426-429 [3d ed]). Bay Club urges that the controversy is moot because, with substantial completion of the project, the use already is changed. In a challenge such as this, however, relief remains at least theoretically available even after completion of the project. Simply put, structures changing the use of property most often can be destroyed.
 

 Recognizing that a race to completion cannot be determinative, and cannot frustrate appropriate administrative review,
 
 *173
 
 courts have found several factors significant in evaluating claims of mootness. Chief among them has been a challenger’s failure to seek preliminary injunctive relief or otherwise preserve the status quo to prevent construction from commencing or continuing during the pendency of the litigation
 
 (see e.g. Matter of Imperial Improvements v Town of Wappinger Zoning Bd. of Appeals,
 
 290 AD2d 507 [2d Dept 2002] [no injunction or stay sought];
 
 Matter of Fallati v Town of Colonie,
 
 222 AD2d 811 [3d Dept 1995] [no injunction sought before Appellate Division];
 
 Matter of Naselli v Gribuski,
 
 206 AD2d 838 [4th Dept 1994] [no injunction or stay sought];
 
 Matter of Stockdale v Hughes,
 
 189 AD2d 1065 [3d Dept 1993] [Levine, J.] [same];
 
 see also Ughetta v Barile,
 
 210 AD2d 562 [3d Dept 1994],
 
 lv denied
 
 85 NY2d 805 [1995] [proceeding commenced after construction completed]).
 

 Factors weighing against mootness may include whether a party proceeded in bad faith and without authority
 
 (see e.g. Matter of Parkview Assoc. v City of New York,
 
 71 NY2d 274,
 
 cert denied and appeal dismissed
 
 488 US 801 [1988] [municipal equitable estoppel case, invalidity of building permit readily discoverable];
 
 Matter of Uciechowski v Ehrlich,
 
 221 AD2d 866 [3d Dept 1995] [earthen berms constructed in violation of town official’s directive]). Courts also have retained jurisdiction notwithstanding substantial completion in instances where novel issues or public interests such as environmental concerns warrant continuing review
 
 (Matter of Friends of Pine Bush v Planning Bd. of City of Albany,
 
 86 AD2d 246 [3d Dept 1982],
 
 affd
 
 59 NY2d 849 [1983];
 
 Vitiello v City of Yonkers,
 
 255 AD2d 506 [2d Dept 1998] [SEQRA challenge, plaintiffs unsuccessfully sought preliminary relief];
 
 Matter of Watch Hill Homeowners Assn. v Town Bd. of Town of Greenburgh,
 
 226 AD2d 1031 [3d Dept],
 
 lv denied
 
 88 NY2d 811 [1996] [same]), and where a challenged modification is readily undone, without undue hardship
 
 (see e.g. Matter of Michalak v Zoning Bd. of Appeals of Town of Pomfret,
 
 286 AD2d 906 [4th Dept 2001] [cellular tower antennas replaced]). As here, the determination of mootness may necessarily be fact-driven.
 
 [4]
 

 In this case, the nature of the challenge does not extend
 
 *174
 
 beyond, these parties and this proposed use. Petitioners failed to seek a temporary restraining order or preliminary injunctive relief at any time during which the matter was pending before Supreme Court. They did not contest the issuance of building permits, or a residential use, but protested that the proposed use was too intensive. Acting in accordance with the use variance and unchallenged building permits, Bay Club proceeded to demolish the marina and repair the bulkhead — to the benefit of local residents — and make other improvements to and arrangements for the property. Petitioners’ half-hearted request for injunctive relief was made only after Supreme Court’s decision upholding the variance and now there has been substantial completion of the project. Under these circumstances, we dismiss the appeal as moot.
 

 Finally, we note that our decision today in no way signals a retreat from the well-established rule that a landowner seeking a variance must demonstrate by “dollars and cents” proof that it cannot obtain a reasonable return under existing permissible uses.
 

 Accordingly, the appeal should be dismissed without costs.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Appeal dismissed, without costs.
 

 [1]
 

 . Zoned as a Business A District, the property may be used as a “market, restaurant, store or other retail business or service, bank, office, place of assembly,” but not as a public garage or a gasoline filling station (City of Long Beach Zoning Code § 9-105.15 [a] [1]).
 

 [2]
 

 . Section 81-b (3) (b) of the General City Law permits the zoning board of appeals to grant a use variance upon a showing of unnecessary hardship, as evidenced by proof that “for each and every permitted use” under the applicable zoning regulations:
 

 “(i) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence;
 

 “(ii) the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood;
 

 “(iii) the requested use variance, if granted, will not alter the essential character of the neighborhood; and
 

 “(iv) the alleged hardship has not been self-created.”
 

 [3]
 

 . This Court denied petitioners’ request for a stay pending appeal but granted a calendar preference (97 NY2d 722).
 

 [4]
 

 . Two additional doctrines — neither before us — also bear mention. First, a claim asserted following unreasonable delay may be barred by the equitable doctrine of laches (see
 
 e.g. Matter of Stockdale,
 
 189 AD2d at 1067;
 
 Matter of Sheerin v New York Fire Dept. Arts. 1 & 1B Pension Funds,
 
 46 NY2d 488, 496 [1979]). Laches must be pleaded and proved by one who urges it
 
 (see Simcuski v Saeli,
 
 44 NY2d 442, 450 [1978]). Second, the doctrine of vested
 
 *174
 
 rights, partly grounded in equitable estoppel principles, may entitle a landowner to continued nonconforming use where the owner made substantial expenditures prior to amendment of applicable zoning laws
 
 (see Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals of Inc. Vil. of New Hempstead,
 
 77 NY2d 114, 122 [1990]).